LEWIS MARTIN, PETITIONER-APPELLANT, v. WESTERN ELECTRIC COMPANY, INC., RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued July 24, 1950—Decided August 1, 1950.

Before Judges McGEEHAN, COLIE and EASTWOOD.

*Mr. John A. Laird* argued the cause for the petitioner-appellant (*Mr. Robert Scherling,* attorney).

*Mr. Arthur F. Mead* argued the cause for the respondent (*Messrs. Cox & Walburg,* attorneys).

The opinion of the court was delivered by

EASTWOOD, J. A. D. The only issue is whether petitioner suffered a compensable injury. The Workmen's Compensation Bureau and the Essex County Court, on appeal, dismissed his petition.

The alleged accident occurred on September 16, 1947, while Martin was operating what is called "the coal drag" or "bucket." It consisted of a long cable and attached thereto is a bucket. One end of the cable is attached to a drum on a machine which revolves one way and the other end to a drum on the machine which revolves in the opposite direction. A twenty-five horse power electric motor is located between the drums. Attached to the motor is a fiber composition friction wheel. Between this wheel on the motor and the cylinder of each drum, there is a clearance of about 20/1000 of an inch. The machine is operated by means of a lever, having a mechanical advantage of leverage of 1,500 to 1, which goes down through a slot in the floor of the tower to the machine about twenty feet below. The extreme range of motion of the lever is controlled by each end of the slot in the floor. The lever has three operating positions, forward, neutral and reverse. The machinery in question was used to move coal from one location to another. Martin had operated it on numerous previous occasions. On the day in question, he testified that at the beginning of his morning's work the lever was "kind of stiff," as it is sometimes in the morning until the machine gets warmed up; that in building "your pile of coal up in order to carry your bucket over and we generally leave a pile of coal at the end of the pile in order to keep the bucket on top of the pile. And this particular morning I missed by judgment a little bit and I let it go a little too far * * * and when she went over * * * the pile of

coal * * * I had to use all my effort and strength and weight to get the bucket back * * *" and "when I jerked it to try to get it back up I felt the pain shoot across my chest." No one was present when the alleged accident occurred. It is conceded that at the time in question, Martin suffered a heart attack, as a result of which he was hospitalized and confined to his home for a considerable period of time thereafter. The medical testimony is in conflict as to the cause of the coronary thrombosis. There was no proof that there was any mechanical defect in any part of the equipment; in fact, it was operated subsequently the same day. When any mechanical difficulty with the machine occurred, whereby the motor was subjected to an unusual strain, there was an automatic switch which would turn it off or it might result in the blowing of a fuse which would automatically stop the operation or the cable might break. None of these things happened that day. The Deputy Commissioner, in the presence of the attorneys for the respective parties, witnessed a demonstration of the operation of the machinery.

Petitioner contends "* * * that every reasonable probability points to the fact that the unusual effort arising out of the fact that the coal bucket went over the top of the coal pile on this particular day, resulted in the petitioner being obliged to use 'all his strength and weight' on the lever and that this unusual strain was the competent and producing cause of the coronary occlusion which he sustained." The company contends that there was not nor could there have been any unusual strain to the operator of the lever controlling the movement of the coal bucket, as the actual effort to pull the lever from the neutral position either to the right or left is constant with the frictional resistance of the various bearings which are very small; that the result of the lever's movements by the operator were mechanical and thereafter if any strain occurred it was on the motor, cables and other mechanical parts of the equipment, and not upon the operator.

Petitioner concedes that "a claim based upon a heart attack appears to have now been settled by a series of decisions in

which *Lohndorf v. Peper Bros. Paint Co.*, 134 *N. J. L.* 156 (*Sup. Ct.* 1946), is perhaps the leading case." In the later case of *Seiken v. Todd Dry Dock, Inc.*, 2 *N. J.* 469 (1949), Mr. Justice Ackerson, speaking for the Supreme Court, stated:

"\* \* \* There is a presumption that injury or death from heart disease is the result of natural physiological causes, the *onus* is upon the petitioner to prove by a preponderance of the probabilities that the employment was a contributing factor to the injury without which the accident would not have occurred. \* \* \*"

We have carefully reviewed the evidence and are satisfied that the petitioner did not "\* \* \* produce evidence of an unusual strain or exertion beyond the mere employment itself to constitute an 'accident' within the meaning of the work-men's compensation law." *Seiken v. Todd Dry Dock, Inc., supra.* The evidence establishes that if any additional or unusual strain was caused by the alleged accident, the machine would be subjected thereto and not the lever or its operator. That the "incident" did not cause any unusual strain on the machinery is borne out by the admitted fact that nothing untoward occurred to it and the coal bucket was disengaged from the coal pile and returned empty.

The judgment of the Essex County Court is affirmed, without costs.